UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF LOUISIANA

**WILBUR J. "BILL" BABIN, JR.,**                **CIVIL ACTION**
**IN HIS CAPACITY AS TRUSTEE**
**OF THE BANKRUPTCY ESTATE**
**OF PHOENIX ASSOCIATES**
**LAND SYNDICATE,**
     **Plaintiff**

**VERSUS**                                                               **No. 10-896**

**CADDO EAST ESTATES I, LTD,**                  **Section "E"**
**ET AL.**
     **Defendants**

## ORDER AND REASONS

Before the Court is a motion under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the claim of plaintiff Wilbur Babin, Jr. (the "Trustee") for aiding and abetting the breach of fiduciary duty, filed by defendant George Schuler.[1] The Trustee opposes the motion.[2] For the following reasons, the motion is **DENIED**.

## BACKGROUND

Wilbur Babin, Jr. is the trustee for the bankruptcy estate of Phoenix Land Associates, Inc. ("Debtor"), which has as its principals C. Paul Alonzo, Ronald L. Blackburn, and Carolyn Alonzo. Debtor filed a voluntary petition for bankruptcy under Chapter 11 on June 10, 2009, which was converted into a Chapter 7 liquidation proceeding on July 31, 2009. The Trustee was appointed on July 31, 2009, and confirmed on August 31, 2009.

On January 19, 2010, the Trustee filed the instant suit, suing Defendants other than

---

[1]     R. Doc. No. 136.

[2]     R. Doc. No. 148.

1

Schuler for avoidance of fraudulent transfers on a theory of constructive fraud. On August 13, 2012, after being granted leave, he filed the second amended complaint at issue, which: (1) added Schuler as an additional defendant, accusing him of aiding and abetting the principals of the Debtor in breaching their fiduciary duties; (2) added a cause of action against Defendants for recovery of fraudulent transfers based on a theory of actual fraud under 11 U.S.C. § 548(a)(1)(A); and (3) added a cause of action against Defendants for a declaratory judgment that the transfer of Debtor's real property is a nullity under Louisiana law.

Schuler moves to dismiss the second amended complaint's claims against him, asserting that: (1) they are preempted by the Bankruptcy Code; (2) there is no cause of action under Louisiana law for aiding and abetting breach of fiduciary duty; (3) if such a cause of action exists, it is barred by Louisiana's statute of limitations; and (4) the Trustee, standing in the shoes of the Debtor, is barred from pursuing any claim by the doctrine of *in pari delicto*.[3]

## STANDARD OF LAW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).[4] As the Fifth Circuit explained in *Gonzalez v. Kay*:

---

[3] R. Doc. No. 136-1, pp. 3–4.

[4] Schuler also relies on Rule 12(b)(1), but as the Court explains *infra*, there is no standing issue, in the sense of standing as a limit on subject matter jurisdiction, in this case.

> "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955, 167 L.Ed.2d 929). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief. " *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

577 F.3d 600, 603 (5th Cir. 2009).

This Court cannot look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey*, 197 F.3d at 774; *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (unpublished) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

## ANALYSIS

### I. Preemption

Schuler asserts that the Trustee's claim for aiding and abetting breach of fiduciary

duty must be dismissed because it is a "veiled claim for aiding and abetting a fraudulent transfer, and such a claim is preempted by the Bankruptcy Code."[5]  In the first instance, the cases Schuler cites bearing on preemption hold only that claims for aiding and abetting a *fraudulent transfer* are preempted, not claims for aiding and abetting *breach of fiduciary duty*.  *See In re Fedders N. Am., Inc.*, 405 B.R. 527, 547–49 (Bankr. D. Del. 2009) (preemption); *In re Brentwood Lexford Partners LLC*, 292 B.R. 255, 275 (Bankr. N.D. Tex. 2003) (preemption); *In re Hamilton Taft & Co.*, 176 B.R. 895, 902 (Bankr. N.D. Cal. 1995) (reaching a preemption result using a standing analysis).[6]  In fact, one of the cases Schuler cites allowed a claim for aiding and abetting breach of fiduciary duty to go forward, despite holding that the claim for aiding and abetting a fraudulent transfer was preempted.  *In re Fedders*, 405 B.R. at 543–44, 547–49.  Many other cases have allowed such claims to proceed as well.  *See, e.g.*, *In re CDX Liquidating Trust*, 640 F.3d 209, 219–20 (7th Cir. 2011); *In re U.S. Bank Nat'l Assoc.*, 817 F. Supp. 2d 934, 944 (N.D. Tex. 2011); *In re Yazoo Pipeline Co.*, 459 B.R. 636, 656 (S.D. Tex. 2011); *In re Tocfhbi, Inc.*, 413 B.R. 523, 536 (Bankr. N.D. Tex. 2009).[7]

Moreover, the reasoning behind preempting claims for aiding and abetting fraudulent transfers—that "the trustee's remedy for an avoided transfer is addressed by a

---

[5] R. Doc. No. 136-1, p. 5.

[6] The other cases Schuler cites simply hold or suggest that the Bankruptcy Code does not provide its own remedy for aiding and abetting a fraudulent transfer.  *In re McCook Metals, L.L.C.*, 319 B.R. 570, 591 (Bankr. N.D. Ill. 2005); *In re H. King & Assocs.*, 295 B.R. 246, 293 (Bankr. N.D. Ill. 2003); *In re Ampat S. Corp.*, 128 B.R. 405, 410–11 (Bankr. D. Md. 1991).

[7] Other support, which the Court has reviewed, appears at R. Doc. No. 148, p. 6 n. 12.

specific statutory provision, section 550, and that provision only allows the trustee to recover" the property or the value of the property "from a transferee, or a party for whose benefit the transfer was made"—does not apply to claims for aiding and abetting breach of fiduciary duty. *Id.* at 548. The Bankruptcy Code does not provide its own exclusive remedy for breaches of fiduciary duty, so a claim for aiding and abetting such conduct does not "lead to a result that expands remedies beyond" those prescribed by Congress. *In re Brentwood*, 292 B.R. at 275. That is, a claim for aiding and abetting a fraudulent transfer addresses only the injury of a fraudulent transfer, one for which the Bankruptcy Code provides a remedy. But a claim for aiding and abetting breach of fiduciary duty—even when the effect of the breach is a fraudulent transfer—addresses the separate kind of injury a breach of fiduciary duty inflicts, an injury for which the Bankruptcy Code does not provide a remedy.

To hold otherwise (by focusing on the loss of property to the corporation rather than the nature of claim brought based on the transfer) would result in a kind of roving preemption where any state law claim could be preempted so long as the transaction giving rise to it could also be characterized as a fraudulent transfer. If this were the case, debtors and those with whom they deal could limit their exposure to disgorgement for claims based not just on breach of fiduciary duty, but also on contract, breach of regulatory requirements (such as inadequate capitalization), and the like. If Congress had intended this result—a significant curtailment of traditional remedies commonly available—it would have spoken more clearly. The Trustee's claim is not preempted.

## II. The State Law Applicable

The parties dispute the appropriate choice of law governing the Trustee's aiding and

5

abetting claim. Schuler asserts that Louisiana law applies, and since Louisiana law does not recognize a claim for aiding and abetting breach of fiduciary duty (and if it does, the claim has prescribed), the Trustee's claim must be dismissed.[8] The Trustee asserts that either Nevada or Texas law applies, both of which recognize a claim for aiding and abetting and consider this claim timely.[9]

Federal courts sitting in diversity apply the choice of law rules of the state in which the court is located. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).[10] The parties suggest that four of Louisiana's choice of law articles could be applicable to this case: the general or residual choice of law provision in Article 3515 of the Louisiana Civil Code; the tort (delict) provision in Article 3542; the "standards of conduct and safety" tort sub-rule in Article 3543; and the "loss distribution and financial protection" tort sub-rule in Article 3544. They also suggest a fifth option, the so-called "internal affairs" doctrine. *Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 386 n.7 (5th Cir. 2009) ("Under Louisiana law, the law of the place where the corporation was incorporated governs disputes regarding the relationship between the officers, directors, and shareholders and the officers' and directors' fiduciary duties."). The doctrine is really a particular example of the policies in Article 3515, one that recognizes the needs of the interstate system will

---

[8] R. Doc. No. 136-1, pp. 7–13; R. Doc. No. 151–1, pp. 3–8.

[9] R. Doc. No. 148, pp. 8–23.

[10] Courts sitting in bankruptcy are not technically bound by *Klaxon*, as they are not exercising diversity jurisdiction. Nevertheless, bankruptcy courts apply the choice of law rules of the state in which they sit as a matter of course when dealing with state law claims in bankruptcy. *In re E. Cameron Partners, L.P.*, 2011 WL 4625368, at *3 (Bankr. W.D. La. June 23, 1999).

always demand that corporations be subject to one set of laws when it comes to their internal affairs so as to avoid conflicting obligations. *Atherton v. FDIC*, 519 U.S. 213, 224 (1997) (noting that the "internal affairs doctrine" is "a conflict of laws principle which recognizes that only one state should have the authority to regulate a corporation's internal affairs . . . because otherwise a corporation could be faced with conflicting demands").

The parties dispute which rule applies, and the outcome of applying a given rule. As an initial matter, the Court notes that the "standards of conduct and safety" and the "loss distribution and financial protection" tort sub-rules do not apply. Loss distribution and financial protection rules involve issues like immunity from suit, whether liability is joint and several, contribution rules, and the like. Standards of conduct and safety rules involve issues like strict liability, the appropriate standard of care, statutory health and safety provisions, and the like. Whether there exists a cause of action for aiding and abetting breach of fiduciary duty and what shape it takes are not issues that fall under either rubric.

The Court also notes that inasmuch as aiding and abetting breach of fiduciary duty is a tort, the general choice of law provision in Article 3515 cannot apply. Article 3542 specifically applies to torts, and Article 3515 applies "only to cases that fall within the scope of this Book and that are not otherwise provided for in this Book." La. Civ. Code art. 3515, cmt. (a) ("If any other article in this Book is found to be applicable to a particular case or issue, that article prevails.").

Eliminating those three Articles from consideration leaves Article 3542, the general tort provision, and the internal affairs doctrine, the freestanding rule derived from Article 3515. The most obvious starting place is the internal affairs doctrine, because it is specifically applicable to breach of fiduciary duty claims. But as the Trustee acknowledges,

7

"generally speaking, different conflicts principles apply where the rights of third parties external to the corporation"—like Schuler—"are at issue."[11] A number of courts have nevertheless concluded that the internal affairs doctrine governs claims against third parties for aiding and abetting a breach of fiduciary duty. *BSS Norwalk One, Inc. v. Raccolta, Inc.*, 60 F. Supp. 2d 123, 129 (S.D.N.Y. 1999) ("[B]ecause the [aiding and abetting breach of fiduciary duty] claim in this case relates fundamentally to the conduct of the internal affairs of BBS, the law of the state of incorporation-Delaware-governs."); *Buckley v. Deloitte & Touche USA LLP*, 2007 WL 1491403, at *13 (S.D.N.Y. 2007) (holding that aiding and abetting breach of fiduciary duty claim "relate[d] to the internal affairs of a corporation, [so it is] governed by the law of the state of incorporation."); *In re Jevic Holding Corp.*, 2011 WL 4345204, at *13 (Bankr. D. Del. 2011) ("Here, because Jevic is a Delaware corporation, Delaware law governs the Committee's claim for aiding and abetting the breach of a fiduciary duty."). Other courts have reached the opposite conclusion. *Marino v. Grupo Mundial Tenedora*, 810 F. Supp. 2d 601, 612–13 (S.D.N.Y. 2011) ("New York courts have taken three approaches to deciding which state's law applies to an aiding and abetting breach of fiduciary duty claim: an internal affairs approach, a torts based 'greater interest' approach, and a hybrid approach."); *In re Magnesium Corp. of Am.*, 399 B.R. 722, 742 (Bankr. S.D.N.Y. 2009); *Solow v. Stone*, 994 F. Supp. 173, 177 (S.D.N.Y. 1998); *In re Adelphia Comm. Corp.*, 365 B.R. 24, 41 (Bankr. S.D.N.Y. 2007).

Most of the decisions electing to apply the internal affairs doctrine do so out of a concern that the same law should apply to both the issue of whether there was a breach of

---

[11] R. Doc. No. 148, p. 10.

fiduciary duty and to the issue of whether a third party aided and abetted the breach of fiduciary duty. But nothing in Louisiana law prohibits the application of one state's law to the issue whether there was a breach of fiduciary duty, and Nevada law clearly governs that issue, and another state's law to whether there is a cause of action for aiding and abetting. *Favaroth v. Appleyard*, 785 So. 2d 262, 265 (La. Ct. App. 2001) ("The use of the term 'issue' in the first paragraph of [the general choice of law] Article is intended to focus the choice-of-law process on the particular issue as to which there exists an actual conflict of laws."); La. Civ. Code. art. 3515 cmt. (d) ("This so-called issue-by-issue analysis is an integral feature of all modern American choice-of-law methodologies and facilities a more nuanced and individualized resolution of conflicts problems. One result of this analysis might be that the laws of different states may be applied to different issues in the same dispute."). In light of this system of dépeçage, and the fact that the internal affairs doctrine does not by its terms apply to claims affecting the rights of third parties (and could produce inequity if it did), the Court concludes that the internal affairs doctrine should not control the choice of law governing this claim against Schuler.

That conclusion leaves Louisiana's tort choice of law provision. This article directs the Court to consider a number of factors, including "the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered" along with "the policies of deterring wrongful conduct and of repairing the consequences of injurious acts." La. Civ. Code. art. 3542. While Schuler is domiciled and engaged in at least some acts in Texas, the Debtor and its principals are, for these purposes, domiciled in Louisiana. Much of the property at issue was located in Louisiana. The relationship between the parties was centered in

Louisiana. And the injury and the conduct of the principals of the Debtor occurred in Louisiana. Moreover, the policies of deterring wrongful conduct and repairing the injurious act can be satisfied under Louisiana law, which may not recognize a freestanding claim for aiding and abetting but does recognize claims for conspiracy under Article 2324. *Guidry v. Bank of LaPlace*, 661 So. 2d 1052, 1057 (La. Ct. App. 1995) (holding "there is no distinct cause of action for aiding and abetting under Louisiana law" only "in the absence of a conspiracy"). Louisiana law therefore applies, and the Trustee is granted leave to amend his complaint to plead a cause of action for conspiracy under Louisiana law.[12]

### III.   *In Pari Delicto*

Schuler asserts that the Trustee "lacks standing and is otherwise barred by the doctrine of *in pari delicto*" from pursuing the aiding and abetting claim.[13] But the *in pari delicto* doctrine is a defense, and "[t]hat the defendant may have a valid defense on the merits of a claim brought by the debtor goes to the resolution of the claim, not the ability of the debtor to assert the claim." *In re Educs. Group Health Trust*, 25 F.3d 1281, 1286 (5th Cir. 1994); *see also In re Senior Cottages of Am., L.L.C.*, 482 F.3d 997, 1003 (8th Cir. 2007) ("Several other circuits have declined to conflate the constitutional standing doctrine with the *in pari delicto* defense," citing *In re Educs. Group Health Trust* in addition to cases

---

[12]   An amendment does not appear to be futile on the ground that any civil conspiracy claim has prescribed. For example, "[i]nterruption of prescription against one joint tortfeasor is effective against all joint tortfeasors," La. Civ. Code art. 2324(C), and there may be other tolling doctrines applicable to claims for breach of fiduciary duty or in bankruptcy. Whether a conspiracy claim has prescribed, just as whether any amended complaint the Trustee elects to file states a claim for civil conspiracy under Louisiana law, may be tested by another motion to dismiss.

[13]   R. Doc. No. 136-1, p. 14.

10

from the First, Third, Sixth, and Eleventh Circuits). That is so even when the defense is "that the causes of action listed in the complaint are not property of the estate because the debtor's representatives participated in the acts or omissions giving rise to the causes of action," i.e., the *in pari delicto* defense. *In re Educs. Group Health Trust*, 25 F.3d at 1286. Accordingly, the Trustee has standing to assert this claim.

It is also not appropriate to dismiss the Trustee's aiding and abetting claim on the basis of Schuler's *in pari delicto* defense. Just as under Texas law, where the success of the defense turns on the "peculiar facts and equities of the case" that cannot be developed at the motion to dismiss phase, *In re Today's Destiny, Inc.*, 388 B.R. 737, 748–49 (Bankr. S.D. Tex. 2008) (quoting *Lewis v. Davis*, 199 S.W.2d 146, 151 (1947)), and under Nevada law, where "[t]he fundamental purpose of the rule must always be kept in mind, and the realities of the situation must be considered," *Magill v. Lewis*, 333 P.2d 717, 719 (Nev. 1959), the *in pari delicto* defense under Louisiana law is factually intensive and requires policy analysis. *See Cole v. Mitchell*, 73 So. 3d 452, 457 (La. Ct. App. 2011) ("The court must apply the rule not because it is a matter of defense, but because it is against public policy to hear the case if the unconscionable character of the matter or transaction be established."). These kinds of "policy analysis can not be undertaken prior to discovery and an evidentiary hearing." *In re Today's Destiny, Inc.*, 388 B.R. at 749.

## CONCLUSION

The Trustee's aiding and abetting breach of fiduciary duty claim against Schuler is not preempted, he has standing to bring it, and it would be inappropriate to dismiss it on the basis of an *in pari delicto* defense. The claim is governed by Louisiana law, however, and it does not recognize aider and abettor liability in the absence of a conspiracy.

Accordingly, the Trustee must amend his complaint to allege a timely cause of action for civil conspiracy against Schuler under Louisiana law. If he does not within 15 days from the date of this order, the claim will be dismissed. Defendants are, of course, free to file new motions to dismiss should the Trustee elect to amend. But at this time, Schuler's motion to dismiss is **DENIED**.

**New Orleans, Louisiana, this 9th day of August, 2013.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**