# UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILBUR J. "BILL" BABIN, JR.,** | **CIVIL ACTION** |
| **IN HIS CAPACITY AS TRUSTEE** | |
| **OF THE BANKRUPTCY ESTATE** | |
| **OF PHOENIX ASSOCIATES** | |
| **LAND SYNDICATE,** | |
|     Plaintiff | |
| | |
| **VERSUS** | **No. 10-896** |
| | |
| **CADDO EAST ESTATES I, LTD,** | **Section "E"** |
|  ET AL. | |
|     **Defendants** | |

## ORDER AND REASONS

Before the Court is Plaintiff's motion for reconsideration[1] of the Court's Order and Reasons of August 9, 2013 denying the motion of George Schuler ("Schuler") to dismiss Plaintiff's claims for aiding and abetting breach of fiduciary duty (the "First Schuler Order").[2] Also before the Court is a motion to dismiss filed by Defendants Caddo East Estates I, Ltd. ("Caddo") and Schuler.[3] The Court has reviewed the briefs, the record, and the applicable law and now issues this Order and Reasons.

## BACKGROUND

Wilbur Babin, Jr. is the Trustee for the bankruptcy estate of Phoenix Land Associates, Inc. ("Debtor"), which has as its principals C. Paul Alonzo, Ronald L. Blackburn,

---

[1] R. Doc. 173.

[2] R. Doc. No. 168, published as *Babin v. Caddo E. Estates I, Ltd.*, 496 B.R. 804 (E.D. La. 2013).

[3] R. Doc. No. 179.

1

and Carolyn Alonzo ("the Principals").  Debtor filed a voluntary petition for bankruptcy under Chapter 11 on June 10, 2009, which was converted into a Chapter 7 liquidation proceeding on July 31, 2009.  The Trustee was appointed on July 31, 2009, and confirmed on August 31, 2009.

On January 19, 2010, the Trustee filed the instant suit, suing Defendants other than Schuler for avoidance of fraudulent transfers on a theory of constructive fraud.  On August 13, 2012, after being granted leave, he filed a second amended complaint which:  (1) added Schuler as an additional Defendant, accusing him of aiding and abetting the Principals of the Debtor in breaching their fiduciary duties; (2) added a cause of action against Defendants for recovery of fraudulent transfers based on a theory of actual fraud under 11 U.S.C. § 548(a)(1)(A); and (3) added a cause of action against Defendants for a declaratory judgment that the transfer of Debtor's real property is a nullity under Louisiana law.[4]

Schuler moved to dismiss the second amended complaint on various grounds.[5]  The Court issued the First Schuler Order denying the motion to dismiss concluding that (1) the Bankruptcy Code does not preempt a claim for aiding and abetting breach of a fiduciary duty, and (2) Louisiana law applies to the Trustee's claim for aiding and abetting breach of fiduciary duty[6] and Louisiana might permit a civil conspiracy claim.  The Court granted Plaintiff leave to amend "to plead a cause of action for conspiracy under Louisiana law."

---

[4]     R. Docs. 117, 129 (substitution adding an allegation of diversity jurisdiction).

[5]     R. Doc. No. 136.

[6]     On page 3 of the memorandum in support of the second motion to dismiss, filed by Caddo East Estates I, Ltd. and Schuler (Doc. 179-1), Schuler says the Court held in the First Schuler Order that Louisiana law "governs plaintiff's claims against Schuler in the lawsuit."  The Court's holding was only with respect to the trustee's aiding and abetting breach of fiduciary claim against Schuler.

Plaintiff then filed Third and Fourth Amended Complaints.[7] In the Fourth Amended Complaint, Plaintiff alleges that Defendants Schuler and Caddo knowingly participated and assisted in the Principals breaches of the fiduciary duties they owed to the Debtor and that the Debtor was proximately damaged by Schuler's and Caddo's aiding and abetting of the breaches of fiduciary duty by the directors and officers of Phoenix.[8] Plaintiff also alleges that Caddo and Schuler conspired with each other and with the officers and directors of Phoenix to commit fraud.[9] Caddo and Schuler filed a second motion to dismiss the new conspiracy claim in the Fourth Amended Complaint and to dismiss Schuler as a defendant altogether.[10]

Plaintiff's motion to reconsider asks that the Court review its rulings in the First Schuler Order "relative only to the following issues: (1) Whether Texas law, and not Louisiana law, governs the Trustee's aiding and abetting claim pursuant to the standards set forth in La. C.C. Art. 3543, or alternatively, Art. 3542; and, if not (2) Whether the Trustee's civil conspiracy claims are prescribed or are otherwise not viable."[11]

---

[7] R. Docs. 171, 177.

[8] The heading after Count 3 of Fourth Amended Complaint says "Aiding and Abetting Breach of Fiduciary Duty of the Debtor's Officers and Directors Under Texas law." Subheadings included in a complaint are not part of the factual allegations. The choice of law is a question of law to be decided by the court based on the factual allegations and not on subheadings found in the complaint.

[9] R. Doc. No. 177 at 15-19.

[10] R. Doc. 179.

[11] R. Doc. 173 at 1. This motion to reconsider is unusual in that it was filed by the prevailing party when the first motion to dismiss was denied. The Plaintiff does not ask the Court to reconsider its denial of the motion to dismiss but only its basis for denial insofar as it was based on choice-of-law principles. The Court also notes that the First

## LEGAL STANDARD FOR MOTIONS TO RECONSIDER

A timely filed motion to reconsider an interlocutory order is evaluated under the same standard as a motion to alter or amend a final judgment brought pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. *See, e.g. Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. 09-4369, 2010 WL 1424398, at *3-4 (E.D. La. Apr. 5, 2010) ("The general practice of this court has been to evaluate motions to reconsider interlocutory orders under the same standards that govern Rule 59(e) motions to alter or amend a final judgment.")[12]

A motion under Federal Rule of Civil Procedure 59(e) calls into question the correctness of a judgment. *In Re Transtexas Gas Corp.*, 303 F.3d 571, 578 (5th Cir. 2002). "A motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (citations and internal quotations omitted). In deciding motions under Rule 59(e), the Court considers the following:

(1) whether the movant demonstrates the motion is necessary to correct manifest

---

Schuler Order did not contain a ruling on prescription. That issue is not properly raised by this motion and will not be addressed herein. To the extent necessary, that portion of the motion is denied.

[12]A Rule 59(e) motion must be filed within twenty-eight days of the entry of judgment. *See* Fed. R. Civ. P. 54(b). A motion to reconsider filed outside this 28-day window is evaluated under the standards governing a motion for relief from final judgment under Rule 60(b). *Stangel v. United States* 68 F.3d 857, 859 (5th Cir. 1995). Because the motion to reconsider was timely filed within the 28-day window, it is properly treated as a Rule 59(e) motion.

errors of law or fact upon which the judgment is based;

(2) whether the movant presents new evidence;

(3) whether the motion is necessary in order to prevent manifest injustice; and

(4) whether the motion is justified by an intervening change in the controlling law.

*Castrillo*, 2010 WL 1424398, at *4. "A Rule 59(e) motion should not be used to relitigate prior matters that should have been urged earlier or that simply have been resolved to the movant's dissatisfaction." *SPE FO Holdings, LLC v. Retif Oil & Fuel, LLC*, No. 07-3779, 2008 WL 3285907, at *3 (E.D. La. Aug. 6, 2008). "A district court has considerable discretion to grant or deny a motion for new trial under Rule 59." *Kelly v. Bayou Fleet, Inc.*, No. 06-6871, 2007 WL 3275200, at *1 (E.D. La. Nov. 6, 2007).

## ANALYSIS MOTION TO RECONSIDER

In the First Schuler Order, the Court held that Louisiana's choice of law rules applied[13] and that Louisiana Civil Code Art. 3542 supplied the analysis to be used when deciding which state's law applied to the Plaintiff's claim for aiding and abetting a breach of fiduciary duty. The Court found that, under the factors set out in Art. 3542, Louisiana law applied. In the motion to reconsider, the Plaintiff argues that under art. 3543 or, alternatively, art. 3542, Texas law applies to this claim. The Court agrees with the arguments made by the Trustee and has, for that reason, reconsidered its ruling in the First Schuler Order and now holds that Texas law governs the Trustee's claim for aiding and abetting breach of fiduciary duty.

In 1984-1988, the Louisiana State Law Institute prepared a *Projet for the*

---

[13] *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *see also* R. Doc. 168 at 6 n.10; 496 B.R. at 809 n.10.

5

*Codification of the Louisiana Law of Conflict of Laws (*"Projet"), which was adopted by the Louisiana Legislature during the 1991 session, to be effective January 1, 1992. The articles added to the Civil Code by the Project were placed in the newly formed Book IV of the Civil Code, Conflict of Laws. The articles dealing with negligent and intentional torts are found in Title VII of Book IV and are numbered as articles 3515 to 3549. Professor Symeon C. Symeonides, formerly the Albert Tate Professor of Law at the LSU Law Center, was the Reporter for the Projet and has written extensively about choice-of-law issues in Louisiana. Professor Symeonides has explained the organization of the articles at issue as follows:

> The Section on Torts, or, in civilian terminology, "Delictual and Quasi-Delictual Obligations," begins with another general article, Article 42,[14] which restates in slightly more specific terms the general approach of Article 15, and then descends gradually to narrower presumptive rules for different categories of issues. Article 43 provides some specific rules for "issues of conduct and safety"; Article 44 establishes specific rules for "issues of loss distribution and financial protection"; Article 45 provides the rule for products liability cases, regardless of whether the particular issue at stake pertains to conduct or to loss distribution; Article 46 enunciates a special rule for punitive damages applicable to both products and non-products cases; Article 47 provides an "escape valve" for the rules of Articles 43-46; and, finally, Article 48 contains a special rule with regard to the domicile of juridical persons.[15]

Thus, Article 3542 provides a general rule for choice-of-law in all Louisiana tort cases but it applies only if there is no more specific article or when the escape valve of

---

[14] References to the Civil Code articles in Professor Symeonides's article are as they appear in the Projet. They are preceded by the number "35" as they appear in the Civil Code. For example, the reference in this sentence to Article 42 is to Article 3542 of the Civil Code.

[15] Symeon C. Symeonides, *Problems and Dilemmas in Codifying Choice of Law for Torts: The Louisiana Experience in Comparative Perspective*, 38 Am. J. Comp. L. 431, 433-34 (1990) (hereinafter "Symeonides, *Choice of Law for Torts*") (footnote added).

Article 3547 applies. Article 3543[16] is the more specific rule for issues of conduct and safety in all Louisiana non-product tort cases (deterrence), as opposed to issues of loss distribution and financial protection (compensation) which are governed by Article 3544. If art. 3543 applies the Court does not have to go through the "laborious analysis of 3542." *See* La. Civ. Code art. 3547 cmt. Article 3543 is a legislative determination of "the state whose policies would be most seriously impaired if its law were not applied." La. Civ. Code art. 3542 cmt. b.

As Professor Symeonides has explained, Article 3543 discounts domicile and focuses instead on the place of conduct and the place of injury:

> Based on the premise that conduct-regulating rules are territorially oriented, Article 43 discounts domicile as a connecting factor and focuses instead on the place of conduct and the place of injury. When these two contacts coincide in the same state, or when they are located in different states that adhere to the same standard of conduct and safety, there is no actual conflict. In interest-analysis terminology, these cases would easily be classified as "false conflicts" in which the state of conduct would be the only interested state. This is why in these cases the first paragraph of Article 43 calls for the application of the law of the place of conduct, without any further qualifications and without regard to whether the standard prescribed by that

---

[16]Article 3543 reads as follows:
Issues pertaining to standards of conduct and safety are governed by the law of the state in which the conduct that caused the injury occurred, if the injury occurred in that state or in another state whose law did not provide for a higher standard of conduct.

In all other cases, those issues are governed by the law of the state in which the injury occurred, provided that the person whose conduct caused the injury should have foreseen its occurrence in that state.

The preceding paragraph does not apply to cases in which the conduct that caused the injury occurred int his state and was caused by a person who was domiciled in, or had another significant connection with, this state. These cases are governed by the law of this state.

law is higher or lower than, for instance, the standard prescribed by the law of the domicile of either or both parties.

Cases in which the tortfeasor's conduct and the victim's injury occur in different states that prescribe different standards of conduct and safety may present a true conflict or false conflict depending on which of the two states prescribes the higher standard. Cases in which the state of conduct is the one prescribing the higher standard can be characterized as false conflicts in which only that state has an interest in having its law applied. [17]

The first paragraph of Article 3543 subjects to the law of the place of conduct cases in which the conduct and the injury occurred in different states and either (1) the state of the injury does not provide for a higher standard of conduct, or (2) the two states adhere to the same standard of conduct and safety.[18] The claim for aiding and abetting breach of fiduciary duty in the second amended complaint is an action sounding in tort leveled against Schuler for actions most of which Schuler, for purposes of these motions, does not dispute took place in Texas.[19] There is no dispute that the laws of the State of Texas provide a cause of action for aiding and abetting breach of fiduciary duty.[20] If the laws of Louisiana also allow a cause of action for aiding and abetting breach of a fiduciary duty, there is a false conflict and under Article 3543 Texas law applies.[21] If Louisiana law does

---

[17] Symeonides, *Choice of Law for Torts,* at 444-45 (footnotes omitted)

[18] *Id.*; Symeon C. Symeonides, *Louisiana Conflict Law: Two Surprises*, 54 La. L. Rev. 497, 513-14 (1994).

[19] R. Doc. 154 at 7; R. Doc. 180 at 5.

[20] R. Doc. 154 at 7.

[21] In the memorandum in support of the second motion to dismiss filed by Caddo East Estates I, Ltd. and Schuler (Doc. 179-1), Schuler says the Court held in the First Schuler Order that "while Louisiana law does not recognize a freestanding claim for aiding and abetting, it does recognize clams for conspiracy under article 2324." R. Doc. 179-1 at 3-4. The Court actually said that Louisiana law "*may not* recognize a freestanding claim for aiding and abetting but does recognize claims for conspiracy under article 2324." R.

not provide a cause of action for aiding and abetting breach of fiduciary duty, then the law of the place of the conduct prescribes a higher standard of conduct and would apply for that reason.  As a result, even if the damage occurred in Louisiana and whether or not Louisiana law recognizes such a cause of action, the first paragraph of Article 3543 governs and Texas law is applicable to this claim.

Because art. 3543 applies, the Court must consider whether the escape mechanism of art. 3547 comes into play because under art. 3547 the rules of art. 3543 may be subordinated to art. 3542 in exceptional cases.  La. Civ. Code art. 3547.  The Court finds that the escape mechanism of art. 3547 does not apply in this case because, from the totality of the circumstances, it is not clearly evident under the principles of Article 3542 that the policies of the State of Louisiana would be more seriously impaired than the policies of the State of Texas if Texas law were applied to the particular issue.

## CONCLUSION

The motion to reconsider is **GRANTED**. The Schuler motion to dismiss Plaintiff's claims for aiding and abetting breach of fiduciary duty is denied because Plaintiff has set forth sufficient factual allegations in support of this claim to entitle him to relief under

---

Doc. 168 at 10; 496 B.R. at 810-11.  The Court did not rule on the issue of whether Louisiana law recognizes a freestanding claim for aiding and abetting breach of fiduciary duty.  Indeed, the *Guidry v. Bank of Laplace* case had to do with solidary liability for aiding and abetting a claim for breach of fiduciary duty under article 2324 and held only that for there to be solidary liability there must be a conspiracy.  *See* 661 So. 2d 1052, 1057 (La. Ct. App. 4 Cir. 1995).  Louisiana law may recognize such a cause of action although, if it does, it may be more properly described as a claim for conspiracy to breach a fiduciary duty/intentional fraud.

Texas law.[22]

Because the Court has reconsidered its prior ruling and now holds that Texas law applies to the Plaintiff's claims for aiding and abetting breach of fiduciary duty, the Court grants the Plaintiff leave to file a fifth amended complaint by August 15, 2014 asserting a cause of action for breach of fiduciary duty only under Texas law. Schuler and Caddo's motion to dismiss is denied without prejudice and they are given leave to file a motion to dismiss in response to the Plaintiff's fifth amended complaint by September 1, 2014, for a submission date on September 24, 2014.

**New Orleans, Louisiana, this 24th day of July, 2014.**

_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**

---

[22] The other holdings in the First Schuler Order regarding preemption and the doctrine of *in pari delicto* still stand.